WILL T. LONGNECKER, APPELLANT, v. JOHN SHIELDS, APPELLEE.

1. INSUFFICIENT AFFIDAVIT FOR CONTINUANCE.—A motion for a continuance of a cause is properly denied which is based on the absence of a witness whose knowledge of the facts he was desired to relate was purely hearsay.

2. LOAN OF MONEY TO START A FARO BANK.—A loan of money to an individual for the purpose of being used in starting a faro bank does not come within the provisions of the statute rendering void all contracts, where the whole, or any part of the consideration shall be—"for the reimbursement or paying any money or property knowingly lent or advanced at the time or place of such play, to any person or persons" gaming or betting on games of chance.

3. SALE AND DELIVERY OF PERSONAL PROPERTY.—The transfer of horses in the hands of an agistor in payment of money previously loaned the seller, and in further consideration that the purchaser

assume the bill for feeding then due, which he does, and thereupon agrees to pay for the future care of the horses, is a valid sale and delivery. Neither an attaching creditor nor an officer serving the writ subsequently issued can acquire a lien on the horses, as against the purchaser, by paying or assuming the bill due the agistor.

*Appeal from District Court of La Plata County.*

Mr. REESE McCLOSKEY, Mr. J. H. McHOLLAND, and Messrs. GALBREATH & JACKSON for appellant.

Messrs. RUSSELL & McCLOSKEY, for appellee.

RICHMOND, P. J. In this action plaintiff, Shields, sought to recover certain horses, or the value thereof, seized by the defendant, Longnecker, as sheriff of La Plata county, under and by virtue of writs of attachment issued in suits wherein Charles Hayes was defendant and Marvin Blain and F. S. Fleshimer & Co. were plaintiffs.

The answer alleged, that the sale from Hayes to Shields was made to hinder and delay creditors, and that Shields had never taken possession of the property; that the bill of sale from Hayes to Shields never had any validity or binding force whatever, for the reason that the consideration for the same was for the sum of money mentioned in said complaint, and the same was furnished by plaintiff to said Charles Hayes, the maker of said alleged bill of sale to start a " Faro Bank " for the purpose of gambling, all of which was fully known to plaintiff at the time he advanced the said money; and alleged that he paid, assumed and secured to be paid a large feed bill, to wit: " One hundred dollars," which constituted a lien upon the horses in complaint described and claimed, at the time the same were attached by defendant, and neither plaintiff nor any one for him has paid or tendered said feed bill, or any part thereof to this defendant, and he is advised that he is entitled to the possession of said horses until said lien is discharged.

Motion was made to strike out the fourth and fifth para-

graphs of the amended answer on the ground that they were insufficient in law as a defense, which motion the court sustained.

The paragraphs referred to are those whereby the defendant claims that the indebtedness for which the horses were transferred by Hayes to Shields was for money loaned by Shields to Hayes for the purpose of gambling, and the further claim of lien for feed bill.

The transcript and abstract in this case afford but little assistance in arriving at the correct issues for our consideration; but, after reading the transcript, the supplemental record and abstract and briefs of the respective counsel, we have come to the conclusion that there are four questions for our determination:

1st.—Did the court err in denying the motion of defendant for a continuance?

2d.—Did the court err in striking out the fourth and fifth paragraphs of the answer?

3d.—Could the sheriff interpose as a defense his claim of lien for the sum of $100 paid by him for feed and care of the horses before taking possession?

4th.—Was the possession of Shields, prior to the attachment, sufficient to vest him with title as against the attaching creditors?

It appears from the record in this case that the April term, 1890, of the district court of La Plata county commenced on the 22d day of April, and that the application for continuance was not made until the 10th day of May following, and within a few days of the closing of the term; that the subpœna for the witness whose testimony defendant desired, was issued the 28th day of April; that the witness was duly subpœnaed and in attendance upon the court until the 6th day of May, when he left and for some reason was unable to return.

The facts and circumstances of which the absent witness was expected to testify, as set forth in the affidavit, would have been inadmissible upon the trial, as they were purely

hearsay, based wholly upon what the witness had understood from general report, or had learned from others relative to the ownership and possession of the horses in question. We think the affidavit was insufficient to warrant the court in granting the motion for a continuance.

The next question to which we are called to address ourselves is as to the validity of the defense that the money, for which the title in these horses was transferred by Hayes to Shields, was loaned by Shields to Hayes for gambling purposes.

Section 850, General Statutes, 1883, reads as follows:— "All contracts, promises, agreements, conveyances, securities and notes made, given, granted, executed, drawn or entered into, where the whole or any part of the consideration thereof shall be for any money, property, or other valuable thing won by any gaming or by playing at cards, or any gambling device or game of chance, or by betting on the side or hands of any person gaming, or for the reimbursing or paying any money or property knowingly lent or advanced at the time or place of such play, to any person or persons so gaming or betting, shall be utterly void and of no effect." * * *

It will be observed that the particular portion of this section relied upon by defendant reads as follows:—"For the reimbursing or paying of any money or property knowingly lent or advanced *at the time and place of such play.* * * *"

The defense set up utterly fails to show that the money was advanced under the circumstances contemplated by the section above recited. As to whether or not this defense could have been interposed by a third party, we need not decide, for the reason that the defense recited in the pleading does not bring it within the scope of the statute or the contention of the defendant.

Now, with reference to the lien—the circumstances as detailed by the witness in this case show that Shields, the plaintiff, loaned to Hayes a certain sum of money; that he took a conditional bill of sale of the horses in question; that the

loan was made for a period of one month, and that at the expiration of that time Shields demanded payment and Hayes, being unable to pay, told him that he could have the horses; that Hayes in company with Shields called upon Salyers, in whose custody the horses then were, advising him that they were the property of Shields, and Shields then and there agreed with Salyers to assume the obligation due from Hayes to Salyers and to pay for the future care of the horses; that this transfer and delivery was made two weeks or more before the attachment writs were served; that at the time of serving the attachment writs Salyers declined to surrender possession unless his claim as agistor of the horses was settled.

We believe the rule to be that, " a lien upon the property of another is not created by a voluntary payment of a liability of his without request," but it is unnecessary for us to invoke this principle here, as it will further appear in the opinion that we hold that Shields was the owner of and entitled to the possession of the property, and neither the attaching debtor nor the sheriff could be subrogated to the agistor's lien which Shields was obligated to pay, or, in other words, there was no obligation resting upon the sheriff to pay the agistor's claim, nor did he thereby acquire a lien upon the horses then belonging to Shields. It was a voluntary payment without consent of Shields, and for a claim supposed to be due by Hayes, the attaching debtor, to Salyers: 1 Jones on Liens, 71 and 73.

In support of his right of possession of the stock, Shields testified that he loaned Hayes the sum of $135 for a period of one month, to secure which he took a bill of sale of the horses belonging to Hayes, then at Salyers' ranch; that when the money was due he demanded payment; that Hayes told him he ·could keep the horses and that he turned the stock over to him and instructed Salyers that he had no more to do with them, but that the stock belonged to him, Shields. That he told Salyers to keep the stock for him until the middle of March, when he would come and pay him his bill, and·

not to allow any one to take the horses without a written order. Hayes in his testimony confirmed the statement of Shields. This was two weeks prior to the attachment.

The testimony on the part of the defendant does not satisfactorily contradict that offered on the part of plaintiff.

" If a mortgagee takes possession of the mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody, if it was previously valid between the parties, although it be not acknowledged and recorded, or the record be ineffectual by reason of any irregularity. The subsequent delivery cures all defects and it also cures any defect there may be through an insufficient description of the property. The taking of possession is an identification and appropriation of the specific property to the mortgage. * * * Delivery of possession under a mortgage before rights have been acquired by others will cure any invalidity there may be in the instrument, whether arising from an insufficient execution of it, or the omission to record it, or from its containing a provision which makes it void except as between the parties." Jones on Chattel Mortgages, § 178, and authorities cited.

So far as the transactions in the case at bar are concerned, we think it can be said that the money was loaned by Shields to Hayes, for which he took a conditional bill of sale ; that subsequently and prior to the rights of any other parties attaching, save and except the lien of the agistor and for which Shields had personally become responsible or for which the agistor could have held the horses, the property had been turned over to Shields, who had entrusted it to the care of Salyers. We are satisfied that the instructions of the court taken in their entirety recite the law applicable to the case ; that the evidence was sufficient to support the verdict.

Finding no error the judgment must be affirmed.

*Affirmed.*